IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TRACY MAXXIZZINE JONES,

    Petitioner,                        No. CIV S-05-1067 GEB GGH P

   vs.

GLORIA A. HENRY, et al.,

    Respondent.                      FINDINGS AND RECOMMENDATIONS

_____/

I. <u>Introduction</u>

        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus. Petitioner challenges her 1996 conviction for assault with force likely to produce great bodily injury (Cal. Penal Code § 245(a)(1)). Petitioner is serving a sentence of 25 years to life pursuant to the Three Strikes Law.

        On May 31, 2005, petitioner filed the original petition. This action is proceeding on the amended petition filed January 27, 2006.

        Pending before the court is respondent's March 21, 2006, motion to dismiss on grounds that this action is barred by the statute of limitations. Petitioner has previously been represented by three counsel: trial lawyer Mesce and two lawyers retained to represent her in state habeas actions, Frank Prantil and Richard Dangler. Mesce and Prantil have both since been

1

disbarred by the California State Bar Association.  Dangler resigned pending disciplinary proceedings.  Normally, an expired period of nine years from the finality of the conviction to the first filed federal habeas petition would merit a "slam dunk" denial on grounds that the federal statute of limitations had run.  However, it is extraordinary that petitioner had the misfortune to be saddled with two lawyers who have become disbarred, one of them twice, and one lawyer who resigned rather than be disbarred.  The conduct exhibited by the lawyers in this case illustrates why they became disbarred/resigned.  As discussed below, based on the misconduct of Prantil and Dangler, the court finds that petitioner is entitled to equitable tolling.  Respondent's motion to dismiss should be denied.

II. <u>Discussion</u>

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The following is the background information to the court's analysis of the statute of limitations, including statutory and equitable tolling.

\\\\\

1          On January 8, 1996, petitioner pled guilty. On March 12, 1996, petitioner was
2 sentenced. Cal. Penal Code § 1237.5 provides that no appeal from a guilty plea is permitted
3 unless defendant has obtained a statement of probable cause from the trial court. At the time of
4 petitioner's conviction, Cal. Rule of Court 31(d) provided that petitioner had sixty days to file her
5 request for a certificate of probable cause. Following her March 12, 1996, sentencing, petitioner,
6 through her lawyer, did not file a request for a certificate of probable cause.

7          Shortly after her March 12, 1996, sentencing, petitioner's mother hired attorney
8 Frank Prantil to file an appeal for her. Petitioner's Opposition, Exhibit 5, ¶ 71. On April 24,
9 1996, Prantil sent petitioner a letter stating that her mother had advanced him $2000 and he was
10 in the process of obtaining transcripts. Id., Exhibit 27. Prantil did not file an appeal within sixty
11 days of petitioner's March 12, 1996, hearing, as petitioner claims he was hired to do.

12          On June 4, 1996, Prantil sent petitioner a letter stating that he was going to file a
13 habeas corpus petition on her behalf alleging ineffective assistance of counsel. Id. On June 27,
14 1996, Prantil sent petitioner a letter stating that three days earlier the California Supreme Court
15 had decided People v. Romero, and that he intended to seek a reduction in her sentence based on
16 this case. Id. He also stated that he was reviewing transcripts from her case and was running a
17 little behind in time on her case. Id.

18          On August 8, 1996, Prantil sent petitioner a letter stating that last week he had
19 promised her mother that he would complete a first draft of the petition, but that he had not been
20 able to do so. Id. He hoped to have a first draft completed by Monday. Id.

21          On August 12, 1996, Prantil sent petitioner a letter stating that he would require a
22 total of $8500 if she wanted to try and set aside her plea entirely. Id. He also stated that he was
23 prepared to draft the petition but needed petitioner's input. Id. On September 26, 1996, Prantil
24 sent petitioner a letter recommending that she attempt to get her entire plea set aside. Id. He also
25 reminded petitioner that it would cost her $8500 for him to challenge her plea. Id.
26 \\\\\

On January 13, 1997, Prantil sent petitioner a letter stating that he was waiting for her mother to get the funds together so that he could do a proper job. Id. On May 22, 1997, Prantil wrote petitioner a letter stating that her mother was working on obtaining witnesses to prove her innocence. Id. Prantil also wrote that the money situation was the only hold up. Id. He concluded, "I believe we will get to court within this year." Id.

On November 13, 1997, Prantil wrote petitioner a letter stating that he received $2000 from petitioner's mother to file a petition in state court pursuant to People v. Romero. Id. He stated that it would cost $2500. Id. He advised petitioner that he would file the petition once he received the $500 balance. Id.

On December 18, 1997, Prantil sent petitioner a copy of the habeas petition for her signature. Id. On February 13, 1998, Prantil filed this petition in Superior Court which raised two claims: 1) pursuant to People v. Romero, the trial court was not aware that it could strike petitioner's prior convictions; 2) ineffective assistance of counsel. On March 12, 1998, now some two years after sentencing, the petition was denied.

On September 10, 1998, Prantil sent petitioner a letter that began, "Thank you for your letter and your patience." Petitioner's Opposition, Exhibit 27. Prantil told petitioner that he was going to file a second petition in superior court. Id. He also advised that he believed he could make a good federal constitutional argument that could work in federal court. Id. Prantil told petitioner that if the second state petition was denied, she could appeal the judgment and he believed that she had a right to a court appointed attorney to represent her on appeal. Id.

On December 2, 1998, Prantil sent petitioner a letter which began, "I haven't forgotten about you." Id. Prantil stated that he had hoped some new law would be decided but that he would not wait any longer to get something filed. Id. On December 23, 1998, Prantil filed a second petition in Superior Court which raised the same issues as the first petition. Respondent's Lodged Document no. D. In denying this petition, the Superior Court noted that it had no authority to overrule a court of equal jurisdiction, i.e. the Superior Court judge who had

1  denied the first petition.  Id.  The Superior Court also stated that it appeared that petitioner and
2  her counsel appeared to "significantly lack an understanding of the issues involved in this
3  matter."  Id.

4  　　　　　On July 22, 1999, now well after three years from the sentencing date, petitioner
5  proceeding pro se filed a third habeas corpus petition in the Sacramento County Superior Court
6  raising the same two claims that were raised in the first two petitions and a new claim alleging
7  involuntary plea.  Petitioner's Amended Petition, 51.  On August 16, 1999, this petition was
8  denied.  Amended Petition, Exhibit 51.

9  　　　　　Around this time, petitioner fired Prantil. On or around April 24, 2000, petitioner
10  retained Richard Dangler to represent her in her state habeas actions.  Petitioner's Opposition,
11  Exhibit 38.  Petitioner paid Dangler $7250.  Id.

12  　　　　　On January 23, 2001, Dangler filed a habeas petition in the Sacramento County
13  Superior Court on petitioner's behalf.  Amended Petition, Exhibit 49.  This petition raised the
14  following claims: 1) plea violated People v. Johnson; 2) involuntary plea; 3) ineffective
15  assistance of counsel; 4) ineffective assistance of appellate counsel; 5) petitioner's priors should
16  be stricken pursuant to People v. Romero; 6) petitioner's writ was rightfully before the Superior
17  Court because the issues presented were wrongfully excluded from the previous petition based on
18  ineffective assistance of counsel.  Id.

19  　　　　　On February 21, 2001, the Superior Court denied the petition.  Amended Petition,
20  Exhibit 51.  The Superior Court denied the petition as untimely and successive, concluding
21  "Habeas petitioners are ordinarily given **but one opportunity** to collaterally attack a judgment of
22  conviction through a habeas corpus petition.  **Petitioner has had not one but three previous**
23  **opportunities**.  Clark is **clear** that petitioner is not be afforded another, without properly meeting
24  an exception as enunciated in Clark."  Id.  (emphasis in original).

25  　　　　　On April 5, 2001, Dangler filed a habeas petition in the California Court of
26  Appeal which essentially raised the same issues as were raised in the petition filed in Superior

5

Court on January 23, 2001. Respondent's Lodged Document 3. On July 12, 2001, somewhat surprisingly from a procedural standpoint, the state appellate court remanded the case to the trial court for the limited purpose of allowing the trial court to exercise its discretion to strike one or more of petitioner's priors. Amended Petition, Exhibit 23. The Court of Appeal denied the petition in all other respects. Id.

On March 14, 2002, now six years after original sentencing, the Superior Court denied petitioner's request to exercise its discretion to strike petitioner's priors. Amended Petition, Exhibit 14. On March 12, 2003, Dangler filed a habeas corpus petition in the California Supreme Court. Respondent's Lodged Doc. F. On June 6, 2004, the petition was denied without comment or citation. Amended Petition, Exhibit 20.

The court first considers when petitioner's conviction became final. Respondent argues that petitioner's conviction became final 60 days after her March 12, 1996, sentencing. Cal. Rule of Court 31(d). Therefore, respondent contends, because this action was not filed within one year of May 11, 1996, it is time barred.

Petitioner argues that her conviction became final after the March 14, 2002, Romero hearing. In support of this claim, petitioner cites United States v. Colvin, 204 F.3d 1221 (9th Cir. 2000), an analogous § 2255 action.

In Colvin, the Ninth Circuit considered when a judgment of conviction became final for purposes of 28 U.S.C. § 2255. In Colvin, on direct appeal, the Ninth Circuit reversed the defendant's conviction as to count nine, and affirmed as to all other counts. 204 F.3d at 1222. The Ninth Circuit also affirmed defendant's sentence because his base offense level remained unchanged. Id. Finally, the Ninth Circuit remanded the case to the district court "with directions to strike the conviction on count nine and to reduce the special assessment. Id.

The mandate was issued on July 29, 1997, and received by the district court on August 4, 1997. Id. On October 16, 1997, the amended judgment was entered in the district court. Id. On October 5, 1998, the defendant filed a § 2255 motion. Id. The district court

1  dismissed the motion as untimely, finding that the limitations period ran from either the date the
2  court received the mandate (August 4, 1997) or when the date had passed for appealing the Ninth
3  Circuit's decision to the Supreme Court, which was September 15, 1997. Id.

4        In reversing the district court, the Ninth Circuit stated that the key inquiry was
5  whether the amended judgment could have been appealed. Id. at 1224. The Ninth Circuit found
6  that the district court's amended judgment was appealable and that the defendant's conviction
7  became final after the time for appealing the amended judgment had passed. Id. at 1225. Thus,
8  the issue in this section 2254 case is whether the result of the Romero remand is appealable.

9        In the instant case, the Superior Court considered petitioner's Romero motion via
10 remand on a habeas petition rather than remand on direct appeal. If considered after appeal
11 remand, there is not much doubt that a decision not to exercise discretion to strike priors is an
12 appealable decision. See e.g. People v. Myers, 69 Cal. App. 4th 305, 309, 81 Cal. Rptr.2d 564,
13 566 (1999). This court can find no published case addressing whether the denial by a Superior
14 Court of a Romero motion raised via habeas rather than direct appeal is appealable, i.e. whether
15 petitioner's remedy is to file an appeal or a habeas petition in the California Court of Appeal.
16 However, in an unpublished case, the California Court of Appeal found that a Superior Court
17 order denying a Romero motion raised via habeas is appealable. Lewis v. Superior Court, 60
18 Cal.App.4th 913, 70 Cal.Rptr.2d 598 (1998) (unpublished). While such a case is not citable as
19 authority, there is no reason why the undersigned cannot adopt its reasoning. Accordingly,
20 because the Superior Court's March 12, 2002, denial of petitioner's Romero motion was
21 appealable, pursuant to Colvin, petitioner's conviction became final after the time passed for
22 filing an appeal of this order. At the time of petitioner's Romero hearing, petitioner had sixty
23 days to file an appeal. See former Cal. Rule of Court 31(d). Again, no direct appeal was filed on
24 behalf of petitioner. Therefore, petitioner had one year from May 13, 2002, to file a timely
25 federal petition. The instant petition filed May 31, 2005, is still not timely unless petitioner is
26 entitled to statutory or equitable tolling.

1         Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. Following the Superior Court's March 12, 2002, denial of her request for relief pursuant to Romero, on March 12, 2003, one year after the Romero denial, petitioner filed a habeas corpus petition in the California Supreme Court. Although the California Supreme Court denied the petition without comment or citation, the one year delay in the filing of this petition is presumptively untimely. Evans v. Chavis, ___ U.S. ___, 126 S. Ct. 846, 854 (2006) ("Six months is far longer than the 'short period[s] of time," 30 to 60 days, that most states provide for filing an appeal to the state supreme court). Accordingly, petitioner is not entitled to statutory tolling.

        The one year statute of limitations for filing a habeas petition may be equitably tolled if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Brambles v. Duncan, 330 F.3d 1197, 1202 (9th Cir. 2003), amended in other respects by 342 F.3d 898 (9th Cir. 2003). The prisoner must show that the "extraordinary circumstances" were the cause of his untimeliness. Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003). "Indeed, the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002). Petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." Id. Determining whether equitable tolling applies is a "fact-specific" inquiry. Fry v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001).

        Petitioner argues that she is entitled to equitable tolling based on the misconduct of Prantil and Dangler. Ordinary attorney negligence will not justify equitable tolling. Spitsyn v. Moore, 345 F.3d 796, 800 (9th Cir. 2003), as amended Nov. 3, 2003. Where an attorney's misconduct is sufficiently egregious, it may constitute an "extraordinary circumstance" warranting equitable tolling of AEDPA's statute of limitations. Id.

\\\\\

Although the statute of limitations did not begin to run until after petitioner had fired Prantil, the court will address whether Prantil's conduct justified equitable tolling in the event it is later determined that petitioner's conviction became final at an earlier time.

Prantil's representation of petitioner was grossly negligent. Although petitioner claims that she hired Prantil to file an appeal for her, the correspondences suggest that Prantil was hired to file a habeas petition. In any event, Prantil did not file a habeas petition for petitioner until approximately *two years* after he was hired. The reasons for this delay appear to be Prantil's dilatory conduct as well as his attempts to obtain more money from petitioner's family. During this time, Prantil did not warn petitioner about the pending deadline for the filing of a timely habeas petition. Moreover, the second petition filed by Prantil in Superior Court was clearly inappropriate. Prantil's misconduct was sufficiently egregious to warrant equitable tolling.

In addition, petitioner was unable to obtain any of her case files from Prantil. To no avail, petitioner wrote the California State Bar two letters requesting that Prantil be ordered to return the files. In Spitsyn, the Ninth Circuit found that the petitioner was entitled to equitable tolling during the time that his counsel, who had let the deadline for filing a timely federal petition run, retained his file. 345 F.3d at 801. The Ninth Circuit found that under these circumstances, it would have been unrealistic to expect the petitioner to file a meaningful petition on his own within the limitations period. Id. In the instant case, petitioner was also unable to file a timely federal petition because she could not obtain her files from Prantil. For this additional reason, petitioner is entitled to equitable tolling based on Prantil's conduct.

Turning to Dangler, on September 3, 2004, Dangler resigned his license to practice law because he was facing disbarment. Petitioner wrote the California State Bar a letter requesting that Dangler be ordered to return her files. The Bar responded that it had limited jurisdiction over an attorney who had resigned. On August 30, 2005, petitioner's present counsel obtained her case file from Dangler's former associate.

Dangler's success in convincing the California Court of Appeal to grant petitioner a Romero hearing in Superior Court constituted a major miracle, considering that petitioner had already filed three habeas petitions in Superior Court raising this claim. However, Dangler's conduct in waiting one year to file a habeas petition in the California Supreme Court after the Romero hearing was grossly negligent in light of the known history of this case, and it was egregious as to justify equitable tolling. Moreover, petitioner was unable to obtain her files from Dangler's associate until August 2005. Although petitioner filed the original petition in May 2005 proceeding in pro se without possessing Dangler's files, she could not have been expected to file a *meaningful* petition without these files. Id. Petitioner's present counsel filed the amended petition on which this action is proceeding only after she obtained the Dangler files. Under these circumstances, petitioner is entitled to equitable tolling based on the inexcusable delay in filing a habeas petition, let alone a direct appeal and on her inability to timely receive her files from Dangler.

For the reasons discussed above, the court finds that the instant petition is timely because petitioner is entitled to equitable tolling based on the egregious misconduct of Prantil and Dangler. Although not dispositive, the court also observes that Prantil, who was disbarred in 1988 and reinstated in 1994, has recently been disbarred yet again. As stated above, Dangler has since resigned from the state bar pending disbarment proceedings. The fact that both of these lawyers are no longer practicing law for reasons related to professional misconduct supports the court's finding that petitioner is entitled to equitable tolling. [1]

Accordingly, IT IS HEREBY RECOMMENDED that respondent's March 21, 2006, motion to dismiss be denied.

\\\\\

---

[1] The court, of course, expresses no opinion on the merits of petitioner's case. These Findings only mean that petitioner should be given her one opportunity to contest her conviction and sentence in federal habeas corpus.

1 | These findings and recommendations are submitted to the United States District
2 | Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3 | days after being served with these findings and recommendations, any party may file written
4 | objections with the court and serve a copy on all parties.  Such a document should be captioned
5 | "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6 | shall be served and filed within ten days after service of the objections.  The parties are advised
7 | that failure to file objections within the specified time may waive the right to appeal the District
8 | Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  8/16/06

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
jo1067.157