1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10  TRACY MAXXIZZINE JONES,

11          Petitioner,              No. CIV S-05-1067 GEB GGH P

12      vs.

13  GLORIA A. HENRY, et al.,        ORDER AND

14          Respondents.            FINDINGS AND RECOMMENDATIONS

15  _____/

16  I. Introduction

17          Petitioner is a state prisoner proceeding through counsel with a petition for writ of

18  habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to the Three Strikes Law, petitioner is

19  serving a sentence of 25 years to life for her conviction for assault with force likely to produce

20  great bodily injury.

21          This action is proceeding on the amended petition filed January 27, 2006, raising

22  five claims.  First, petitioner alleges that her counsel was ineffective for wrongly advising her

23  that if she pled guilty she would be sentenced to one year in jail and for failing to move to

24  withdraw her plea.  Second, petitioner alleges that her plea was involuntary because she did not

25  understand the consequences of her plea.  Third, petitioner alleges that her counsel was

26  ineffective for failing to adequately investigate her case.  Fourth, petitioner alleges ineffective

1

1 assistance of appellate counsel.  Fifth, petitioner alleges that her due process rights were violated

2 because the judge was not fair and impartial at her original sentencing and at her <u>Romero</u>

3 hearing.

4       Pending before the court is petitioner's August 15, 2008, motion for an

5 evidentiary hearing.  On September 18, 2008, a hearing was held regarding this motion.

6 Stephanie Adraktas appeared on behalf of petitioner.  Mark Johnson appeared on behalf of

7 respondent.  For the following reasons, the court orders that petitioner's motion is denied.  The

8 court also recommends that the petition be granted as to petitioner's ineffective assistance of

9 appellate counsel claim and denied in all other respects.

10 II.  <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

11       The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

12 petition for habeas corpus which was filed after the AEDPA became effective.  <u>Neelley v. Nagle,</u>

13 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

14 AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

15 standards of review to be used by a federal habeas court in assessing a state court's adjudication

16 of a criminal defendant's claims of constitutional error.  <u>Moore v. Calderon</u>, 108 F.3d 261, 263

17 (9th Cir. 1997).

18       In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

19 Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

20 for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

21 between "contrary to" clearly established law as enunciated by the Supreme Court, and an

22 "unreasonable application of" that law.  <u>Id</u>. at 1519.  "Contrary to" clearly established law applies

23 to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

24 Court on a point of law, or (2) if the state court case is materially indistinguishable from a

25 Supreme Court case, i.e., on point factually, yet the legal result is opposite.

26 \\\\\

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id.  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state

court decision is objectively unreasonable." <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).

In order to determine the standard of AEDPA deference to be applied in this action, the following background information is required.

On February 13, 1998, and December 23, 1998, petitioner filed habeas corpus petitions through counsel in the Sacramento County Superior Court which did not raise any of the claims raised in the instant petition.  Amended Petition, Exhibits 50, 58.

On July 22, 2000, proceeding pro se petitioner filed a habeas corpus petition in Sacramento County Superior Court raising the claims that her counsel was ineffective for failing to adequately advise her of the consequences of her plea and also that her plea was involuntary. Amended Petition, Exhibit 51.  The Superior Court denied the petition on procedural grounds and did not address the merits of the claims.  <u>Id.</u>

On January 23, 2001, through counsel, petitioner filed a habeas petition in Sacramento County Superior Court raising claims that her plea was involuntary and that her counsel was ineffective for not adequately investigating her case and for failing to advise her of the consequences of her plea.  Amended Petition, Exhibit 49.  This petition also raised a claim for ineffective assistance of appellate counsel.  <u>Id.</u>

On February 21, 2001, the Superior Court denied the petition as successive and untimely.  Amended Petition, Exhibit 48.  In making these findings, the Superior Court considered exceptions to these procedural bars: 1) the petition alleges facts establishing a fundamental miscarriage of justice, or 2) the petitioner is presenting newly discovered claims demonstrating due diligence.  <u>Id.</u>  In evaluating these factors, the court commented on the merits of these claims, as it had to.  <u>Id.</u>  However, it is clear that the Superior Court made no separate finding as to the merits of the claims.  Rather, all comments regarding the merits of the claims

\\\\\

\\\\\

were made in the context of the Superior Court's evaluation of the procedural bars at issue.[1]

On April 10, 2001, through counsel petitioner filed a habeas corpus petition in the California Court of Appeal.  Respondent's March 21, 2006, Lodged Document E.  This petition raised all of the claims raised in the instant petition but for the claim that the judge at the Romero hearing was biased.  Id.

On July 12, 2001, the California Court of Appeal remanded petitioner's case to the trial court for re-sentencing pursuant to People v. Romero, 8 Cal.4th 728, 240 (1994).  Amended Petition, Exhibit 23.  As to the remaining claims the state appellate court's order stated, "The petition for writ of habeas corpus is denied in all other respects."  Id.

On March 12, 2003, following petitioner's re-sentencing hearing where the judge declined to strike either of petitioner's offenses, through counsel petitioner filed a habeas corpus petition in the California Supreme Court raising all of the claims raised in the instant action but for the claim that the court was biased at the Romero hearing.  Respondent's March 21, 2006, Lodged Document F.  On June 9, 2004, the California Supreme Court denied the petition without comment or citation.  Amended Petition, Exhibit 20.

The United States Supreme Court has held that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgement or rejecting the same claim rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590 (1991).  This court "looks through" the "silent denial" of the California Supreme Court to the opinion of the California Court of Appeal.  See id.; see also Gill v. Ayers, 342 F.2d 911, 917 n. 5 (9th Cir. 2003) (the court "'look[s] through' the unexplained California Supreme Court decision to the last reasoned decision, the state appellate court's decision, as the basis for the state court's judgment.")

---

[1]  Both parties in the instant action construe the Superior Court opinion as addressing the merits of some of petitioner's claims.  As indicated above, this court disagrees with this interpretation and finds that the Superior's Courts comments regarding the merits of the claims was made in the context of its consideration of the procedural bars.

1    This court looks through the California Supreme Court's unexplained order to the

2    opinion of the California Court of Appeal.  The state appellate court denied petitioner's claims in

3    one sentence which does not constitute a reasoned decision.  As to those claims addressed by

4    both the California Court of Appeal and the Superior Court, this court looks through the state

5    appellate court's decision to the Superior Court decision, which denied petitioner's claims on

6    procedural grounds, i.e. the claims alleging involuntary plea, ineffective assistance of counsel

7    based on counsel's failure to advise her of the consequences of her plea and failure to investigate,

8    and ineffective assistance of appellate counsel.  Because no state court decided these claims on

9    the merits, the court considers these claims under a de novo standard of review rather than the

10   more deferential "independent review" of unexplained decisions on the merits.  See Lewis v.

11   Mayle, 391 F.3d 989, 996 (9th Cir. 2004).  In conducting this de novo review, this court still

12   considers clearly established Supreme Court authority and must find that the decision violates

13   that law.  28 U.S.C. § 2254(d).

14   As to the claims raised for the first time in the California Court of Appeal, the

15   court finds that the state appellate court issued an unexplained decision addressing the merits of

16   these claims, i.e. ineffective assistance of counsel based on counsel's failure to move to withdraw

17   the plea and judicial bias at the original sentencing hearing.  In other words, the court cannot look

18   through to the Superior Court's reasoned decision because the Superior Court did not address

19   these claims.  The court conducts an independent review of these claims.

20   As will be discussed infra, petitioner's claim alleging that the trial judge at the

21   Romero hearing was biased is unexhausted.  However, because this claim is without merit, the

22   court may consider the claim despite the lack of exhaustion.  28 U.S.C. § 2254(b)(2).  The court

23   conducts a de novo review of this claim.

24   \\\\\

25   \\\\\

26   \\\\\

III.  Discussion

      A.  Claims 1 and 2

        Petitioner seeks an evidentiary hearing as to claims 1-4 of the amended petition filed January 27, 2006.  The court will first address this request as to claims 1 and 2.

        As stated above, in claim 1 petitioner alleges that her counsel was ineffective for wrongly advising her that she would receive a 1 year sentence if she pled guilty and for failing to move to withdraw her guilty plea.  In claim 2, petitioner alleges that her plea was involuntary because she did not understand the consequences of her plea.

      *Legal Standard for an Evidentiary Hearing*

        If a petitioner "failed to develop the factual basis for a claim" in state court, the federal court "shall not hold an evidentiary hearing on the claim" unless the petitioner can show that one of two narrow exceptions is applicable.  28 U.S.C. § 2254(e)(2).  Whether a petitioner failed to develop a claim in state court turns on whether the petitioner exhibited a lack of diligence or some greater fault in state court.  Williams v. Taylor, 529 U.S. 420, 421, 120 S.Ct. 1479 (2000).  Ordinary diligence requires that petitioner seek an evidentiary hearing in state court in the manner prescribed by state law.  Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479 (2000).  Under California law, an appellate court, when presented with a state habeas petition, determines whether an evidentiary hearing is warranted only after the parties file formal pleadings, if they are ordered to do so.  Horton v. Mayle, 408 F.3d 570, 582 n.6 (9th Cir. 2005).  If the state court denies the petition without ordering formal pleadings, the case never reaches the stage where an evidentiary hearing must be requested and the petitioner's failure to request a hearing in state court does not trigger § 2254(e)(2).  Id.

        In the instant case, petitioner requested an evidentiary hearing in her state appellate petition.  See Respondent's March 21, 2006, Lodged Document E, p. 58.  In the amended petition, petitioner contends that on May 24, 2001, the California Court of Appeal issued an order requiring the Attorney General to file a written opposition to petitioner's habeas

corpus petition.  Amended Petition, ¶ 25.  Respondent does not dispute this assertion.  Because petitioner sought an evidentiary hearing in state court in the manner prescribed by state law, the court finds that petitioner did not "fail to develop" the facts because she acted diligently in seeking an evidentiary hearing in state court.  See Williams v. Taylor, 529 U.S. at 437, 120 S.Ct. at 1491.

Accordingly, although petitioner's habeas petition is governed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), which limits a district court's discretion in conducting evidentiary hearings and discovery, see 28 U.S.C. § 2254(e)(2), this court assesses the availability of an evidentiary hearing under pre-AEDPA law because petitioner exercised sufficient diligence in seeking to develop the factual basis of her claim in state court.  Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479 (2000).

"Under pre-AEDPA law, a habeas petition is entitled to an evidentiary hearing [and discovery] on a claim where the facts are in dispute if 1) he has alleged facts that, if proven would entitle him to relief; and 2) he did not receive a full and fair evidentiary hearing in state court."  See Silva v. Calderon, 279 F.3d 825, 853 (9th Cir. 2002).

In Schriro v. Landrigan, ___ U.S. ___, 127 S.Ct. 1933, 1940 (2007), the Supreme Court recently added another consideration in granting evidentiary hearings.  The Supreme Court held that "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  127 S.Ct. at 1940.  Accordingly, "[i]t follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  Id.

Accordingly, the court considers whether petitioner is entitled to an evidentiary hearing.

\\\\\

\\\\\

8

*Legal Standards for Ineffective Assistance of Counsel and Involuntary Plea*

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688, 104 S. Ct. at 2065.  To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  Id. at 690, 104 S. Ct. at 2066.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  Id., 104 S. Ct. at 2066.  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at 693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct. 2052.  Thus, even when a court is presented with an ineffective-assistance claim not subject to §

9

2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly.  See Williams, supra, at 411, 65 S. Ct. 363.[2]  Rather, he must show that the [ ]Court of Appeals applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-699, 122 S. Ct. 1843,1852 (2002).

The test for determining whether a plea is valid is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366 (1985).  "[T]he record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." Brady v. United States, 397 U.S. 742, 747 n. 4, 90 S.Ct. 1463 (1970).  A guilty plea is coerced where a defendant is "induced by promises or threats which deprive [the plea] of the nature of a voluntary act." Iaea v. Sunn, 800 F.2d 861, 866 (9th Cir. 1986).  To determine the voluntariness of the plea, we look to the totality of the circumstances, examining both the defendant's "subjective state of mind" and the "constitutional acceptability of the external forces inducing the guilty plea." Id.

In Blacklege v. Allison, 431 U.S. 63, 97 S.Ct. 1621 (1977), the Supreme Court addressed the presumption of verity to be given the record of plea proceedings when the plea is subsequently subject to a collateral challenge.  While noting that the defendant's representations at the time of her guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the Supreme Court stated that, nonetheless, the defendant's representations, as well as any findings made by a judge accepting the plea, "constitute a

---

[2] This internal citation should be corrected to Williams v. Kaiser, 323 U.S. 471, 477, 65 S. Ct. 363 (1945).

10

1  formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in

2  open court carry a strong presumption of verity."  Id. at 74.

3       *Background*

4       On January 8, 2006, petitioner entered a plea before Sacramento County Superior

5  Court Judge Long.  See Change of Plea Hearing Transcript, Respondent's Lodged Document BB,

6  Lodged July 11, 2007.  At this hearing, the prosecutor described petitioner's plea bargain.  First,

7  it was agreed that petitioner would plead guilty to count one, assault with force likely to produce

8  great bodily injury.  Id. at 3.  This was a "wobbler" offense.  Id.  In exchange, the remaining

9  counts, other than five and six, were dismissed with a Harvey waiver.  Id. at 4.  Counts five and

10  six were dismissed outright.  Id.  All enhancements charged in connection with the other counts

11  were dismissed as well.  Id.  Petitioner also admitted two prior serious convictions.  Id.

12       After hearing a description of the plea bargain, the judge asked, "Then the legal

13  consequences would be then if she pleads to the two serious felonies, if Count One remains a

14  serious felony, it would have the legal effect of a twenty-five year to life in State's prison

15  sentence?"  Id. at 4-5.  The prosecutor responded, "That's correct, your Honor."  Id. at 5.  The

16  court then asked the prosecutor what petitioner's exposure would be *if she did not accept the plea*

17  *bargain*.  The prosecutor responded,

18      In lieu of the fact that there were two victims in the present case, my
    understanding of the law is that we can sentence mandatorily twenty-five years to
19      life on each count.  In addition to that, the enhancements have to be imposed
    mandatorily based on my reading of the three strikes law and five year priors has
20      to be imposed mandatorily.  So, my estimation is seventy-five years to a hundred
    years to life, your Honor, and that's a rough estimation on my part.

21

22  Id. at 5.

23      The court asked petitioner if she understood the description of her potential

24  sentence and petitioner responded, "yes."  Id.  The court then asked if she understood the terms

25  of the plea agreement:

26  \\\\\\

Court:  Ma'am, do you–the understanding is that you are going to enter a plea of guilty to Count One as a violation of Penal Code section 245(a)(1), assault, with force likely to produce great bodily injury as a felony as related to what's charged, the robbery charged in Count One.  The further understanding is that that can be disposed of as a felony or a misdemeanor at Judgment and Sentence depending upon the court's evaluation and whether justice would be served by Court making it a misdemeanor.  Do you understand what I have said so far?

Petitioner: Yes.

Court: Now, ma'am, the further understanding is that all the counts, the substantive charges and the enhancements other than Counts Five and Six will be dismissed with a Harvey waiver which means although those enhancements and counts are dismissed, the Court may consider it for purposes of restitution and for purposes of enhancing your sentence on the count that you are going to plead guilty to.  Do you understand?

Petitioner: Yes.

Court: The further understanding, ma'am, is that Counts Five and Six based upon your plea on motion of the District Attorney will be dismissed in the interest of justice.  Do you understand?

Petitioner: Yes.

Court: Ma'am, it is further represented to Court that you are going to admit prior convictions two and four which are serious felonies which in effect would be strikes which means, ma'am, if you make those admissions and if I do not reduce Count One to a misdemeanor at Judgment and Sentence, you face the possibility of being sentenced to twenty-five years to life in State's prison.

Petitioner's Counsel: Your Honor, I would still reserve that right to attack those priors even in light of this plea; isn't that correct?

Court: Well, it depends upon what you want to do.  Sure, you can attack them, but unless they are found to be deficient, ma'am, the priors that you are going to admit, based upon your plea to Count One and you admitting these two priors, you face a possibility of being sentenced to State's Prison for twenty-five years to life. Do you understand?

Petitioner: Yes.

Court: Do you?

Petitioner: Yes.

Court: You understand that if in court's discretion count one is not reduced to a misdemeanor and further if your lawyer in terms of the two priors that you are going to admit to –why don't you all come forward.  Would you please come forward?

12

1   (Whereupon a discussion was had at the bench between the Court and counsel.)

2   Court: I'm going to have your lawyer talk with you.

3   Petitioner's Counsel: I misspoke is what happened.

4   Court: You need to talk with her.  Ma'am, when you admit these two priors, two
    and four that I mentioned, the understanding is that you have admitted the truth
5   and validity of those priors and in all probability you will not have the opportunity
    to attack their infirmity in terms of the truth and validity of the Judgment and
6   Sentence.  Do you understand that, ma'am?

7   Petitioner: Yes.

8   Court: You have to speak up, ma'am.

9   Petitioner: Yes.

10  Court: So again, if you admit these two priors and if you admit the Count One as I
    have represented, the 245(a)(1) as reasonably related, then you face the possibility
11  of being sentenced to State's Prison for up to twenty-five years to life.  Do you
    understand that, ma'am?
12
    Petitioner: Yes.
13
    Court: Now, ma'am, if, in fact, the Court reduces Count One to a misdemeanor,
14  ma'am, that means you will not face twenty-five years to life, but it would be my
    intention to give you the maximum sentence possible under that which would be
15  as follows:

16  That, one, all time that you have earned up to Judgment and Sentence when you
    come back here, that you will waive the seven months that you have served for
17  purposes of the sentence that the Court might impose and if, in fact, it is reduced
    to one year, I would impose a one year sentence starting all over without the
18  benefit of the seven months that you have served.  Do you understand?

19  Petitioner: Yes.

20  Court: Do you understand that?

21  Petitioner: Yes.

22  Court: Now, ma'am, you need to quit crying and listen to me.  You got yourself
    into this.  Do you understand?
23
    Petitioner: I understand.
24
    Court: What I'm trying to tell you, ma'am, if it is reduced, you will start one year
25  all over again and you won't get the benefit of the seven months, do you
    understand, for the purposes of this sentence?
26

Petitioner: Yes.

*****

Court: Ma'am, on the twenty-five year to life sentence, if you go to prison, ma'am, do you understand that you could be on parole for the rest of your life?

Petitioner: Yes.

Court: Now, ma'am, I want to make it so you understand, you and your lawyer understand that I am not promising you that I'm going to reduce this down to a misdemeanor.  I'm not making you that promise.  I will evaluate Count One in terms of whether it should be a misdemeanor in light of what's represented in terms of what occurred in Count One as well as your prior record including felony and/or other misconduct in terms of making my decision.  Do you understand that ma'am?

Petitioner: Yes.

Court: You have no guarantee that I'm going to reduce it to a misdemeanor.  Do you understand?

Petitioner: Yes.

Court: Now, would you take a little time and talk with your lawyer to assure yourself you understand what I have just stated?

Petitioner: Yeah.

(Whereupon a discussion was had between defense counsel and defendant.)

Defense Counsel: Your Honor, my client understands.

Court: Ma'am, do you understand?

Petitioner: Yes.

Court: Ma'am, do you understand also that this is a tentative agreement which means if after I receive matters in the probation officer's report and any other matters that pertain to Judgment and Sentence, that if I can't abide by this plea bargain, that you will be allowed to withdraw your pleas of guilty and your admissions, not guilty pleas would be entered and denials and you'd proceed to trial on all the charges in the Information and enhancements?  Do you understand that, ma'am?

Petitioner: Yes, sir.

Id. at 5-10.

\\\\\

14

1    The court then took petitioner's plea.  Prior to the sentencing hearing, Judge Long

2  withdrew from the case due to a conflict of interest.

3    On March 12, 2006, petitioner appeared before Judge Ransom for sentencing.  <u>See</u>

4  Transcript from Sentencing Hearing, Respondent's Lodged Document CC, Lodged July 11,

5  2007.  At this hearing, petitioner's counsel argued that the offense should be reduced to a

6  misdemeanor.  <u>Id.</u> at 4-6.  The prosecutor argued that petitioner should receive a three strikes

7  sentence.  <u>Id.</u> at 12.  Judge Ransom denied petitioner's motion to reduce petitioner's conviction

8  to a misdemeanor and sentenced her to 25 year to life.  <u>Id.</u> at 13.  In doing so he stated,

9    First of all, the court is aware of its discretion to reduce this to a misdemeanor.  I
    listened very carefully to everything that was said by both sides, and, having done

10    so, it is my ruling that the motion to reduce it to a misdemeanor is denied.

11  <u>Id.</u> at 13.

12    In her declaration submitted in support of the instant petition, petitioner claims

13  that she pled guilty because her lawyer told her that if she accepted the plea agreement she would

14  receive a one year sentence in county jail.  <u>See</u> Petitioner's Declaration attached to amended

15  petition, declaration 1, ¶ 5.  Petitioner claims that had she known that she would receive a

16  sentence of 25 years to life, she would not have pled guilty.  <u>Id.</u> at 9.  Petitioner claims that her

17  trial counsel told her that if she pled guilty, she would receive one year in jail and if she went to

18  trial, she would get a much longer sentence.  <u>Id.</u>, ¶ 10.  Petitioner claims that at the change of

19  plea hearing, her lawyer told her to answer "yes" to the judge's questions.  <u>Id.</u> at 11.

20    In her declaration, petitioner also states that before she pled guilty she told her

21  counsel that she was not comfortable about admitting her prior convictions.  <u>Id.</u> at 53.  Defense

22  counsel told her that admitting the priors "doesn't matter," and that the prosecutor insisted that

23  she admit them as a condition for his acceptance of the plea bargain that would allow her to

24  receive a one year jail sentence.  <u>Id.</u> at 54.

25    Petitioner states that when Judge Ransom sentenced her to 25 years to life, she

26  told her counsel that she wanted to withdraw her plea.  <u>Id.</u> at 67.  Defense counsel told her that

15

1   she could not.  Id.

2           Petitioner has also submitted a declaration by trial counsel who states, in relevant

3   part,

4           4.  I initially negotiated a plea where Tracy would plead guilty to one assault
            charge with the understanding that the court could treat this wobbler offense as
5           either a misdemeanor (not triggering the three strikes rule) or as a felony
            (triggering the three strikes rule).  I explained that there was no guarantee that
6           Judge Long would treat the assault as a misdemeanor.  But I also told her that if
            the Judge deemed it a felony, I would have the opportunity to, and would,
7           withdraw the plea.  But when Judge Ransom took over the sentencing and decided
            to treat it as a felony, I never attempted to withdraw the plea.

8
            5.  Also, one of the terms of the plea was that Tracy would admit her priors.  I
9           encouraged that she should take this plea even though she was adamant that the
            facts underlying the prior assault plea were an accident.  And even though I knew
10          that the prior was an accident, I encouraged her plea [sic] the contrary.

11  Counsel's declaration attached to amended petition, declaration 2.

12          Trial counsel has since been disbarred.

13          Petitioner now seeks an evidentiary hearing in order to call trial counsel to testify

14  regarding what he told petitioner regarding the plea agreement and also regarding his failure to

15  withdraw the plea.  Petitioner herself would testify at this hearing.

16          *Analysis*

17          Respondent argues that petitioner is not entitled to an evidentiary hearing because

18  the claims are without merit.  As discussed above, consideration of whether petitioner is entitled

19  to an evidentiary hearing involves evaluation of the merits of the claims.  The court now turns to

20  the merits of these claims.

21          This court finds that the terms of petitioner's plea agreement are clear from the

22  change of plea hearing transcript quoted above: petitioner pled guilty to assault and admitted her

23  prior convictions.  The trial judge would then consider whether to treat petitioner's assault

24  conviction as a felony or a misdemeanor.  If he treated it as a misdemeanor, petitioner would be

25  sentenced to 1 year in jail.  If he treated it as a felony, petitioner would be sentenced to 25 years

26  to life.  In exchange, the prosecutor agreed to dismiss the other charges against petitioner, for

16

1   which she faced a much greater sentence of 75-100 years to life.

2           In her declaration, petitioner claims that her counsel falsely told her that she

3   would be sentenced to no more than one year if she accepted the plea agreement.  However, at

4   the change of plea hearing, it was made clear to petitioner by the court that she was facing a

5   sentence of 1 year or 25 years to life pursuant to the plea agreement.  The court's colloquy with

6   petitioner cured any misrepresentation made to petitioner by her counsel regarding the possible

7   sentences she faced.  Indeed, the colloquy could not have been more clear.  Petitioner's

8   statements at the hearing that she understood that she faced a possible sentence of 25 years to life

9   is entitled to a presumption of verity which she has not overcome.  The court also observes that

10  petitioner's claim that her counsel told her that would receive a one year sentence is not

11  supported by counsel's declaration.  Counsel states that he told her that there was no guarantee

12  that the judge would treat her conviction as a misdemeanor.

13          In the traverse and post-evidentiary hearing brief, petitioner argues that because

14  she entered a "sentence bargain" agreement, she necessarily had to have agreed to plead guilty in

15  exchange for reduction of her charge to a misdemeanor.  The background to this argument is as

16  follows.

17          Plea bargains resulting in a particular charge are called "charge bargains" and

18  those resulting in sentencing restrictions are called "sentence bargains."  2 Erwin. Et al., Cal.

19  Criminal Defense Practice (2002) Arraignment & Please, ch. 42, p. 42-135.  Sentence bargaining

20  is codified at Cal. Penal Code § 1192.5.[3]  In pleas made pursuant to § 1192.5, the court retains

---

[3]  Sentence bargaining is codified at Cal. Penal Code § 1192.5:

> Upon a guilty or nolo contendere to an accusatory pleading charging a felony,
> other than a violation of paragraph (2), (3), or (6) of subdivision (a) of Section
> 261, paragraph (1) or (4) of subdivision (a) of Section 262, Section 264.1, Section
> 286 by force, violence, duress, menace or threat of great bodily harm, subdivision
> (b) of Section 288, Section 288a by force, violence, duress, menace or threat of
> great bodily harm, or subdivision (a) of Section 289, the plea may specify the
> punishment to the same extent as it may be specified by the jury on a plea of not
> guilty or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and

1   discretion to withdraw approval of such pleas and must inform the defendant of the plans

2   conditional nature.  Id.  Charge bargaining is codified in Cal. Penal Code §§ 1192.1 and 1192.2.

3   In contrast to § 1192.5, neither § 1192.1 or 1192.2 contain language indicating that the court

4   retains authority to withdraw approval of the plea once given.  See People v. Mihail, 13 Cal.

5   App. 4th 846, 16 Cal. Rptr. 2d 641 (1993).

6          In the instant case, petitioner argues that because Judge Long told her that he

7   retained discretion to withdraw approval of her plea, it must have been a sentence bargain.  From

8   that, petitioner argues that the plea agreement must have been that her charge would be reduced

9   to a misdemeanor or else she would be allowed to withdraw her plea.  Otherwise, petitioner

10  argues, if she agreed to a 25 year to life sentence there would have been nothing for the judge to

11  reject and she would receive no benefit .

12         Petitioner's argument about a "sentence bargain" versus a "charge bargain" is

13

14         may specify the exercise by the court thereafter of other powers legally available
           to it.

15         Where the plea is accepted by the prosecuting attorney in open court and is
           approved by the court, the defendant, except as otherwise provided in this section,
16         cannot be sentenced on the plea to a punishment more severe than that specified in
           the plea and the court may not proceed as to the plea other than as specified in the
17         plea.

18         If the court approves of the plea, it shall inform the defendant prior to the making
           of the plea that 1) its approval is not binding, 2) it may, at the time set for the
19         hearing on the application for probation or pronouncement of judgment, withdraw
           its approval in the light of further consideration of the matter, and 3) in that case,
20         the defendant shall be permitted to withdraw his or her plea if he or she desires to
           do so.  The court shall also cause an inquiry to be made of the defendant to satisfy
21         itself that the plea is freely and voluntarily made, and that there is a factual basis
           for the plea.

22
           If the plea is not accepted by the prosecuting attorney and approved by the court,
23         the plea shall be deemed withdrawn and the defendant may then enter the plea or
           pleas as would otherwise have been available.

24
           If the plea is withdrawn or deemed withdrawn, it may not be received in evidence
25         in any criminal, civil, or special action or proceeding of any nature, including
           proceedings before agencies, commissions, boards and tribunals.

26

simply wrong, or at best, a red herring as the plea encompassed *a mixture* of the two.  The

prosecution agreed to dismissal of *charges*, and its potential ability to acquire a sentence of 75

years to life, for a plea to which the defendant would receive *in the discretion of the court* a

sentence of either the misdemeanor maximum, or the three strikes maximum (with the dismissed

charges out of the picture).  There was never any promise about a discrete sentencing, i.e. that

one over the other had to be imposed.  Thus, it is not a "sentence" bargain in the sense that the

judge clearly advised that under the plea bargain the sentence could be not more than "one year."

Even if the two possible sentences to be imposed could be construed as a sentence bargain in

part, petitioner's myopic focus on the plea bargain as only being that which remained after the

dismissal of the charges is simply not warranted by the *entirety* of the plea bargain.  Petitioner

makes no argument that such mixed plea bargains are somehow unlawful.

Under either construction, there was no violation of the plea bargain at all, and

petitioner's "right" to withdraw the plea if the plea bargain was not honored, even if she had that

right, never ripened.  This case is not unlike in principle People v. Jackson, 103 Cal. App. 3d

635, 163 Cal. Rptr. 115 (1980), in which the defendant was promised a misdemeanor sentence on

a wobbler charge if he had a "clean record."  It turned out that the defendant did not have a clean

record (he had altered his identity), and the defendant was sentenced to the upper term on the

felony charge.  The Jackson court found that defendant had no "right" to withdraw the plea

because the agreement had been honored.  The plea agreement was honored here in that the

sentencing judge "considered" the possibility of a misdemeanor sentence as the agreement

required.

Petitioner's argument not only misconstrues the nature of the plea agreement, but

it also flies in the face of the judge's adamant warnings to petitioner that *under the plea*

*agreement* she could be facing the maximum penalty of 25 years to life.  Petitioner, in essence,

would ignore these admonishments and claim that the judge was really promising a misdemeanor

sentence because he advised her that she had the right to withdraw her plea if the plea was not

honored.  This alleged promise to a misdemeanor sentence cannot be tortured from the mere, and perhaps erroneous advice, that she would have the right to withdraw her plea if what the judge told her was not honored.

This court further disagrees with petitioner's suggestion that a sentence bargain made pursuant to § 1192.5 precludes, as a matter of law, an agreement that provides for a defendant to receive the maximum possible sentence.  Under § 1192.5, a maximum term is acceptable.  See § 1192.5 ("The plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty[.]".)  For this reason, the court rejects petitioner's argument that her sentence bargain prohibited her from entering a plea agreement to the maximum sentence.[4]

Petitioner also argues that her counsel was ineffective for failing to move to withdraw her plea.  Counsel admits in his declaration that he told petitioner that he would move to withdraw her plea if the judge decided to treat her conviction as a felony.  For the reasons discussed above (in there was no right to withdraw the plea) and below (the court finds that this advice was wrong because counsel had no legal grounds to move to withdraw the plea), no claim is stated.  However, Judge Long cured this error by correctly advising petitioner of the circumstances under which she could withdraw her plea.

In California law, the general legal principles governing review of a defendant's motion to withdraw a guilty plea are well established.

> A defendant who seeks to withdraw his guilty plea may do so before judgment has been entered upon a showing of good cause. [Citations.] 'Section 1018 provides that ... "On application of the defendant at any time before judgment ... the court may, ... for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." Good cause must be shown for such a withdrawal, based on clear and convincing evidence. [Citation.]' [Citations.] 'To establish good cause, it must be shown that defendant was operating under mistake,

---

[4]  Plea bargains for the "maximum" term on a remaining count are commonplace, even in the undersigned's misdemeanor practice, i.e., a recidivist charge which could lead to a year in prison is dismissed by agreement in exchange for an agreement to be sentenced to the maximum six months on the remaining primary count.

ignorance, or any other factor overcoming the exercise of his free judgment. [Citations.] Other factors overcoming defendant's free judgment include inadvertence, fraud or duress. [Citations.]' [Citation] 'The burden is on the defendant to present clear and convincing evidence the ends of justice would be subserved by permitting a change of plea to not guilty.' [Citation.] [¶] ' "When a defendant is represented by counsel, the grant or denial of an application to withdraw a plea is purely within the discretion of the trial court after consideration of all factors necessary to bring about a just result. [Citations.] On appeal, the trial court's decision will be upheld unless there is a clear showing of abuse of discretion. [Citations.]" [Citation.] 'Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged.' [Citation.]"

People v. Weaver, 118 Cal.App.4th 131, 145-146, 12 Cal.Rptr.3d 742 (2004).

Moreover, "[a] plea may not be withdrawn simply because the defendant has changed his mind." People v. Nance, 1 Cal .App.4th 1453, 1456, 2 Cal.Rptr.3d 670 (1991).  Nor does "'the mere fact that the defendant, knowing his rights and the consequences of his act, entered the plea under a hope of leniency present [ ] ground[s] for the exercise of the discretion of the court.'"  People v. Burkett, 118 Cal.App.2d 204, 210 (1953).

Based on the legal standards discussed above, counsel had no legal grounds to move to withdraw petitioner's plea.  While counsel may have wrongly advised petitioner that he could and would move to withdraw the plea, this misadvice was cured by Judge Long at the change of plea hearing.  At this hearing, Judge Long correctly told petitioner that she could withdraw her plea only if he rejected the terms of the plea agreement, which had just been explained to petitioner.  Petitioner indicated that she understood this statement.  This statement by petitioner is entitled to a presumption of verity which petitioner has not overcome.  The court also observes that Judge Long did not tell petitioner that she could withdraw her plea if he decided to treat her conviction as a felony.  By informing petitioner of the circumstances under which she could move to withdraw her plea, Judge Long cured counsel's misadvice to petitioner.

In support of her claim that her plea was involuntary based on misadvice by counsel, petitioner cites Chizen v. Hunter, 809 F.2d 560 (1986).  In Chizen, the petitioner plead no contest to one count in exchange for the prosecutor dismissing the second count.  809 F.2d at

21

1   561-562.  Petitioner's counsel told him that a plea bargain had been struck whereby the judge

2   would not sentence him to more than 90 days in jail.  Id at 561.  Petitioner was sentenced to 180

3   days.

4          Prior to sentencing, petitioner moved to withdraw the plea on grounds that it had

5   been induced by his attorney's assurance that the maximum sentence he would receive for

6   pleading guilty would be 90 days.  809 F.2d at 561.  The motion to withdraw was denied and

7   petitioner was sentenced to 180 days.  Id.

8          In his federal habeas, petitioner argued that his plea was not voluntary despite his

9   signing and initialing a Tahl-Boykin waiver form in which he indicated that he understood that

10  "regardless of motions or recommendations [made] by others...the sentence will be decided

11  solely by the judge."  Id.  The form stated that "the district attorney has agreed to make the

12  following motions or recommendations: Midi (30 days to 180 days."  Id. at 562.

13         The Ninth Circuit found that under the circumstances of the case, the petitioner

14  had overcome the strong presumption of verity accorded to his statements made during the taking

15  of his plea and the Tahl-Boykin waiver form: "When Chizen signed the Tahl-Boykin waiver

16  form and when he discussed his rights with the trial judge at the time of the taking of his plea, he

17  was still operating under the belief that the trial judge would abide by the alleged plea bargain.  It

18  was only later, just prior to sentencing, that Chizen became aware that he had been misled by his

19  attorney.  Based on the specific facts of this case, we find that Chizen's plea must be held not to

20  be voluntary-unless he receives the sentence for which he bargained."  Id. at 563.

21         In Chizen, the attorney's misadvice was not cleared up by the trial judge at the

22  change of plea hearing, as in the instant case.  Rather, the petitioner in Chizen did not learn until

23  just prior to sentencing that he had been misled by his attorney.  In the instant case, at the change

24  of plea hearing Judge Long made the terms of the plea agreement clear to petitioner.  He also told

25  petitioner that she could withdraw her plea only if he decided to reject it after reading the

26  probation report.  Under these circumstances, petitioner's statements on the record that she

1  understood her plea agreement and the circumstances under which it could be withdrawn do not

2  overcome the strong presumption of verity accorded to these statements.

3           Because the record refutes petitioner's related ineffective assistance and

4  involuntary plea claims that she did not understand that she could possibly be sentenced to 25

5  years to life, and her ineffective assistance of counsel claim based on counsel's failure to move to

6  withdraw her plea, the court finds that she is not entitled to an evidentiary hearing as to these

7  claims.  Schriro v. Landrigan, ___ U.S. ___, 127 S.Ct. 1933, 1940 (2007).  For the reasons

8  discussed above, after conducting a de novo review of the record, the court finds that petitioner's

9  related involuntary plea and ineffective assistance of counsel claims are without merit.  After

10  independently reviewing the record, the court finds that petitioner's ineffective assistance of

11  counsel claim based on counsel's failure to move to withdraw her plea is without merit.

12           Claims 1 and 2 should be denied.

13           B.  Claim 3

14           In claim 3, petitioner alleges that counsel was ineffective for failing adequately

15  investigate or negotiate her case and for failing to advise her to exercise her right to a jury trial on

16  the charged counts.  The gravamen of this claim is that had counsel adequately investigated the

17  case, he would have advised petitioner not to waive her right to a jury trial.

18           As discussed previously in the April 15, 2008, order denying petitioner's request

19  to conduct discovery as to this claim, this claim of pre-plea defects is waived.  See April 15,

20  2008, order at 4; Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602 (1973); United States v.

21  Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam) (holding that defendants' pre-plea

22  ineffective assistance of counsel issue was waived).  While petitioner characterizes her claim as

23  involving the voluntariness of her plea, it truly concerns counsel's pre-plea conduct.  Because

24  petitioner pled no contest, her claim alleging that her counsel failed to adequately investigate is

25  waived.

26  \\\\\

In <u>Moore v. Czerniak</u>, 534 F.3d 1128 (9th Cir. 2008), a majority of a Ninth Circuit panel determined a case which implicitly found that a pre-plea ineffective assistance of counsel in failing to move to suppress was a ground for granting the writ.  The majority did not cite <u>United States v. Bohn</u>, 956 F.3d 208, 209 (9th Cir. 1992) or <u>Moran v. Godinez</u>, 57 F.3d 690, 700 (9th Cir. 1994) which stand for the proposition that pre-plea ineffective assistance of counsel claims are not cognizable once a plea is entered.  The majority did not explain why, for example, an erroneous decision on a motion to suppress is <u>Tollett</u> barred if a plea is later made, but an ineffective assistance of counsel claim with respect to the suppression motion, or lack thereof, is not.

This court believes that there is now a split of authority in the Ninth Circuit on the survivability of pre-plea ineffective assistance of counsel claims and has chosen to rely on <u>Bohn</u>, <u>supra</u>, and <u>Moran</u>, <u>supra</u>, in these findings and recommendations.

After conducting a de novo review of the record, the court finds that this claim should be denied.  Because this claim is without merit for the reasons discussed above, petitioner is not entitled to an evidentiary hearing as to this claim.

D.  <u>Claim 4</u>

In claim four, petitioner alleges that she received ineffective assistance of counsel from attorney Frank Prantil in connection with her state appeal.[5]  The background to this claim is set forth in the August 17, 2006, findings and recommendations addressing respondent's motion to dismiss on statute of limitations grounds.  The court will repeat this background here:

> On January 8, 1996, petitioner pled guilty.  On March 12, 1996, petitioner was sentenced.  Cal. Penal Code § 1237.5 provides that no appeal from a guilty plea is permitted unless defendant has obtained a statement of probable cause from the trial court.  At the time of petitioner's conviction, Cal. Rule of Court 31(d)

---

[5]  Petitioner states no ineffective assistance of counsel claim against any counsel who represented her in her state habeas petitions because she has no right to counsel for the purpose of filing a state habeas petition.  <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 556-557, 107 S.Ct. 1990 (1987).  Where no constitutional right exists, there can be no claim for ineffective assistance of counsel.  <u>Wainwright v. Torna</u>, 455 U.S. 586, 587-88, 102 S.Ct. 1300 (1982).

provided that petitioner had sixty days to file her request for a certificate of probable cause.  Following her March 12, 1996, sentencing, petitioner, through her lawyer, did not file a request for a certificate of probable cause.

Shortly after her March 12, 1996, sentencing, petitioner's mother hired attorney Frank Prantil to file an appeal for her.  Petitioner's Opposition, Exhibit 5, ¶ 71. On April 24, 1996, Prantil sent petitioner a letter stating that her mother had advanced him $2000 and he was in the process of obtaining transcripts.  Id., Exhibit 27.  Prantil did not file an appeal within sixty days of petitioner's March 12, 1996, hearing, as petitioner claims he was hired to do.

On June 4, 1996, Prantil sent petitioner a letter stating that he was going to file a habeas corpus petition on her behalf alleging ineffective assistance of counsel.  Id. On June 27, 1996, Prantil sent petitioner a letter stating that three days earlier the California Supreme Court had decided People v. Romero, and that he intended to seek a reduction in her sentence based on this case.  Id.  He also stated that he was reviewing transcripts from her case and was running a little behind in time on her case.  Id.

On August 8, 1996, Prantil sent petitioner a letter stating that last week he had promised her mother that he would complete a first draft of the petition, but that he had not been able to do so.  Id.  He hoped to have a first draft completed by Monday.  Id.

On August 12, 1996, Prantil sent petitioner a letter stating that he would require a total of $8500 if she wanted to try and set aside her plea entirely.  Id.  He also stated that he was prepared to draft the petition but needed petitioner's input.  Id. On September 26, 1996, Prantil sent petitioner a letter recommending that she attempt to get her entire plea set aside.  Id.  He also reminded petitioner that it would cost her $8500 for him to challenge her plea.  Id.

On January 13, 1997, Prantil sent petitioner a letter stating that he was waiting for her mother to get the funds together so that he could do a proper job.  Id.  On May 22, 1997, Prantil wrote petitioner a letter stating that her mother was working on obtaining witnesses to prove her innocence.  Id.  Prantil also wrote that the money situation was the only hold up.  Id.  He concluded, "I believe we will get to court within this year."  Id.

On November 13, 1997, Prantil wrote petitioner a letter stating that he received $2000 from petitioner's mother to file a petition in state court pursuant to People v. Romero.  Id.  He stated that it would cost $2500.  Id.  He advised petitioner that he would file the petition once he received the $500 balance.  Id.

On December 18, 1997, Prantil sent petitioner a copy of the habeas petition for her signature.  Id.  On February 13, 1998, Prantil filed this petition in Superior Court which raised two claims: 1) pursuant to People v. Romero, the trial court was not aware that it could strike petitioner's prior convictions; 2) ineffective assistance of counsel.  On March 12, 1998, now some two years after sentencing, the petition was denied.

On September 10, 1998, Prantil sent petitioner a letter that began, "Thank you for

your letter and your patience." Petitioner's Opposition, Exhibit 27. Prantil told petitioner that he was going to file a second petition in superior court. Id. He also advised that he believed he could make a good federal constitutional argument that could work in federal court. Id. Prantil told petitioner that if the second state petition was denied, she could appeal the judgment and he believed that she had a right to a court appointed attorney to represent her on appeal. Id.

On December 2, 1998, Prantil sent petitioner a letter which began, "I haven't forgotten about you." Id. Prantil stated that he had hoped some new law would be decided but that he would not wait any longer to get something filed. Id. On December 23, 1998, Prantil filed a second petition in Superior Court which raised the same issues as the first petition. Respondent's Lodged Document no. D. In denying this petition, the Superior Court noted that it had no authority to overrule a court of equal jurisdiction, i.e. the Superior Court judge who had denied the first petition. Id. The Superior Court also stated that it appeared that petitioner and her counsel appeared to "significantly lack an understanding of the issues involved in this matter." Id.

On July 22, 1999, now well after three years from the sentencing date, petitioner proceeding pro se filed a third habeas corpus petition in the Sacramento County Superior Court raising the same two claims that were raised in the first two petitions and a new claim alleging involuntary plea. Petitioner's Amended Petition, 51. On August 16, 1999, this petition was denied. Amended Petition, Exhibit 51.

Around this time, petitioner fired Prantil. On or around April 24, 2000, petitioner retained Richard Dangler to represent her in her state habeas actions. Petitioner's Opposition, Exhibit 38. Petitioner paid Dangler $7250. Id.

August 17, 2006, findings and recommendations, pp. 3-5.

Where a defendant instructs counsel to pursue an appeal, and the counsel fails to do so, that representation is per se ineffective. United States v. Sandoval-Lopez, 409 F.3d 1193, 1197 (9th Cir. 2005), citing Roe v. Flores-Ortega, 528 U.S. 470, 477, 120 S.Ct. 1029 (2000); Rodriguez v. United States, 395 U.S. 327, 89 S.Ct. 1715 (1969).

In the answer to the amended petition, respondent does not dispute that petitioner hired Mr. Prantil to handle her appeal.[6] Respondent argues that petitioner's ineffective assistance of appellate counsel claim is without merit because petitioner failed to provide Mr. Prantil with

---

[6] See Answer, Court file doc. # 60, p. 16 ("After pleading guilty and being sentenced to prison, Petitioner opted to abandon her right to seek state-appointed counsel and instead sought to retain her own chosen appellate attorney. According to petitioner's own pleadings, however, she was unable to provide her chosen attorney with the funds he demanded as a retainer to represent her on appeal.")

the funds necessary to retain him until after the time for filing a timely appeal had passed. Respondent argues that prior to that time, Mr. Prantil had no duty to provide petitioner representation because he was not yet her attorney.  Respondent further argues that if petitioner could not afford to pay Mr. Prantil, she could have easily requested a state-appointed appellate attorney.  Respondent concludes that the fault for filing a timely appeal rests with petitioner, and not Mr. Prantil.

As discussed above, petitioner had sixty days from March 12, 1996, to begin the appeal process by filing a request for a certificate of probable cause.  Mr. Prantil's April 24, 1996, letter to petitioner states that her mother advanced him $2000.  While the record does not indicate what Mr. Prantil's retainer fee was, petitioner had certainly paid Mr. Prantil enough money to cover his costs to begin the appeal process before the sixty days had run.  If it was later determined that petitioner could not afford to pay Mr. Prantil the rest of the retainer and other costs, Mr. Prantil could have filed a motion to withdraw as her attorney.  For these reasons, the court rejects respondent's argument that petitioner's failure to adequately pay Mr. Prantil justified his failure to file a timely request for a certificate of probable cause.

Respondent goes on to argue that even if Mr. Prantil acted unreasonably by failing to timely request a certificate of probable cause, petitioner has not met the prejudice prong of Strickland by demonstrating that she would have prevailed on appeal.  As indicated above, petitioner is not required to demonstrate that she would have prevailed on appeal in a claim alleging that counsel failed to file an appeal after being instructed to do so.  United States v. Sandoval-Lopez, 409 F.3d 1193, 1197 (9th Cir. 2005), citing Flores-Ortega, supra, Rodriguez, supra.  Prejudice is established by the failure to file an appeal.

After conducting a de novo review of the record, and applying clearly established Supreme Court authority, the court finds that petitioner was denied the effective assistance of counsel in connection with her appeal.  Because no facts are disputed regarding this claim an evidentiary hearing is not required.  This claim should be granted.  Petitioner should be permitted

1  to file an appeal in state court as her remedy.

2      E.  Claim 5

3      Petitioner argues that Judge Ransom demonstrated judicial bias at both her March

4  12, 1996, sentencing hearing and her March 14, 2002, Romero hearing.  Respondent argues, and

5  this court agrees, that petitioner's claim alleging judicial bias at the Romero hearing is

6  unexhausted, at least in part.

7      In the petition filed in the California Supreme Court, petitioner argued that she

8  was denied her right to an impartial judge at her sentencing hearing.  Respondent's March 12,

9  2003, Lodged Document F, p. 57-58.  Petitioner's discussion of this claim concerns only the

10  March 12, 1996, sentencing hearing.  No mention is made of the Romero hearing.  In the

11  discussion of this claim petitioner mentions only Mr. Mesce, who represented him at the original

12  sentencing hearing.  No mention is made of Ms. Kung, who represented him at the Romero

13  hearing.

14      The exhaustion of state court remedies is a prerequisite to the granting of a

15  petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  A petitioner satisfies the exhaustion

16  requirement by providing the highest state court with a full and fair opportunity to consider all

17  claims before presenting them to the federal court.  Picard v. Connor, 404 U.S. 270, 276,  92 S.

18  Ct. 509, 512 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied, 478 U.S.

19  1021 (1986).

20      "Exhaustion, however, does not require that a 'habeas petitioner...present to the

21  state court *every piece of evidence* supporting his federal claims in order to satisfy the exhaustion

22  requirement.'"  Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008), quoting  Chacon v. Wood,

23  36 F.3d 1458, 1469 n. 9 (9th Cir. 1994), superseded on other grounds by 28 U.S.C. § 2253(c).

24  "Rather, to exhaust the factual of the claim, the petitioner must only provide the state court with

25  the operative facts, that is, 'all of the facts necessary to give application to the constitutional

26  principle upon which [the petitioner] relies.'"  Id., quoting Daugharty v. Gladden, 257 F.2d 750,

28

758 (9th Cir. 1958).

Petitioner failed to present all of the operative facts of her claim in her petition filed in the California Supreme Court.  The California Supreme Court had no way of knowing that petitioner was alleging bias by Judge Ransom at the Romero hearing as well as the original sentencing hearing.  However, the court will consider the unexhausted portion of this claim because it is without merit.  28 U.S.C. § 2254(b)(2).

To succeed on a judicial bias claim, petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators."  Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456 (1975).  Bias can "almost never" be demonstrated solely on the basis of a judicial ruling.  Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147 (1994).  A judge's remarks or opinions will not demonstrate bias unless they "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."  Id.

Petitioner first cites Judge Ransom's remarks at the March 12, 1996, sentencing hearing as demonstrating bias:

> Court: The record will reflect that the matter has been referred to the Probation Department, their report has been received, read and considered by the Court, ordered filed as a part of the records of the case.  What is the purpose of this document from the DA's office?
>
> Prosecutor: Statement in Aggravation, Your Honor.
>
> Court: Well, the three strikes, what do we care?
>
> Prosecutor: Well, I understand that defense is planning on filing a motion to ask the Court to reduce this to a misdemeanor, and so we would like to give the Court all the information that it can have for making an appropriate ruling.
>
> Court: Thank you so much.

Amended Petition, Exhibit 13, p. 3.

Petitioner appears to argue that the judge's "the three strikes, what do we care" comment demonstrated that the court did not take his motion to reduce the charge to a misdemeanor seriously.  Petitioner has taken the judge's comment out of context.  It is clear that

in stating "the three strikes, what do we care," the judge was responding to the prosecutor's intention to introduce a statement in aggravation.  The court's statement obviously reflected his belief that a statement in aggravation was unnecessary because petitioner was facing a three strikes sentence.  The court has reviewed the entire transcript from the March 12, 1996, sentencing hearing and finds no evidence of unconstitutional judicial bias.

The transcript from the March 14, 2002, Romero hearing is fairly short so it will be quoted here:

> Court: Bring out Miss Jones.  Tracy Maxxizzine Jones.
>
> Petitioner: Yes.
>
> Court: 95F05910.  This was sent back here by the Court of Appeal for me to consider whether or not for me to exercise my discretion as provided by Romero.  I read and considered all the paperwork that has been filed on each side.  And I've also reviewed the probation report that was filed at the time and the update which is also filed which told us what you've been doing since you've been incarcerated.  Any further argument by either side?
>
> Petitioner's Counsel: Real quickly, Your Honor.  I just wanted [sic] verify you're aware she has been recently married as of last year. She has three children waiting for her as well as an ailing mother and soon to be coming grandchildren, and if she is–if you do decide to exercise your discretion, she will be released to people that make sure she doesn't come back.
>
> Court: Do the People want to be heard?
>
> Prosecutor: Submit it.
>
> Court: It's a tough call but I feel in considering the facts of this case and her prior record and the Harvey waiver matters I'm not going to grant the motion.
>
> Petitioner's Counsel: Quick argument with regards to the priors.
>
> Court: That's why you made your argument.  You had your chance.  What else do you got to say that's new?
>
> Petitioner's Counsel: The two priors are on the same day in 1991.  They were sentenced concurrently.  Obviously at the time at least the sentencing judge thought the facts didn't warrant consecutive sentencing therefore obviously not warranting as severe punishment it could have been back then with the misdemeanors more recent as well.
>
> Court: That argument doesn't wash.  That's my decision.  I decide not to exercise my discretion.

Petitioner's Counsel: Your Honor, we want to really quickly note just preserving for appeal that we are going to be appealing this.

Court: Whatever.

Petitioner's Counsel: Thank you.

Amended Petition, Exhibit 14.

Petitioner argues that the judge's comment "whatever" at the conclusion of the hearing demonstrates judicial bias. The judge's "whatever" comment does not demonstrate a high degree of antagonism so as to make a fair judgment impossible.

The court has also considered the judge's comments from both hearings together and does not find that, in their entirety, they demonstrate unconstitutional judicial bias.

After independently reviewing the record, the court finds that the denial of the judicial bias claim based on comments at the sentencing hearing was an unreasonable application of clearly established Supreme Court authority. After conducting a novo review of the record, the court finds that petitioner's claim of judicial bias at the Romero hearing is without merit.

Conclusion

While this court has found that the counsel representing petitioner previously in her criminal proceedings did not perform effectively, petitioner has been well represented by the counsel representing her in the instant action.

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for an evidentiary hearing (# 86) is denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be granted as to the claim that she was denied her right to effective assistance of appellate counsel; within sixty days of the adoption of these findings and recommendations, petitioner should be permitted to initiate the appeal process in state court; the petition should be denied in all other respects.

\\\\\

1          These findings and recommendations are submitted to the United States District

2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3 days after being served with these findings and recommendations, any party may file written

4 objections with the court and serve a copy on all parties.  Such a document should be captioned

5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6 shall be served and filed within ten days after service of the objections.  The parties are advised

7 that failure to file objections within the specified time may waive the right to appeal the District

8 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9 DATED: 11/24/08

                                  /s/ Gregory G. Hollows

10                                                       _____

11                                    UNITED STATES MAGISTRATE JUDGE

12

13 jone1067.evi(2)

14

15

16

17

18

19

20

21

22

23

24

25

26